**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BRIDGET DE MOURA CASTRO & LUIZ DE MOURA CASTRO, by his next friend Helena Hilario<br><br>　　　　　　　　　Plaintiffs<br><br>　　　vs.<br><br>LOANPAL, LLC d/b/a GOODLEAP,<br><br>PRIME ENERGY LLC d/b/a PRIME ENERGY SOLAR,<br><br>1ST LIGHT ENERGY INC.,<br><br>　　　　　　　　　Defendants | NO. |

## COMPLAINT

## I.　　INTRODUCTION

1.　　This is an action for damages and other relief brought by elderly consumers pursuant to Connecticut's Unfair Trade Practices Act ("CUTPA"), the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., and state law prohibiting the exploitation of elderly persons.

2.　　Plaintiffs are 80-year-old senior citizens who reside together in Connecticut.  Mr. Luiz de Moura Castro has Parkinson's disease and requires a live-in aid to provide 24-hour care. He lacks the ability to care for himself, speak coherently, or sign documents.  Both Plaintiffs have given power of attorney over finances to their daughters.

3.　　Defendants are in the business of soliciting consumers for the purchase of solar panels and/or installing solar panels on consumers' homes.  Defendants' sales agents solicit consumers at their homes to enter 25-year loans and other contracts using electronic tablets such as iPads.

4.      Applicable law requires that Defendants provide consumers a copy of the contract documents at the time of signing.  The law also affords consumers the right to cancel the contract within three business days of receiving the contract.

5.      The elderly Plaintiffs' signatures and initials were forged on the various contract documents, including a 25-year Loan Contract.  Defendants were able to conceal the fraudulent contract from Plaintiffs by fabricating and/or falsifying Plaintiffs' email address and phone number.

6.      Defendants hid this unconscionable transaction because these elderly consumers had no business getting solar power on their small, shaded roof; yet these businesses only wanted to make a profit on a sale, no matter what.  Here is a picture of the Plaintiffs' home (and shaded, tree covered roof), after installation:



7.      At the time of forgery, Defendants did not provide written disclosures regarding the existence of a loan, the annual percentage rate, the finance charge, or the amount financed.

8.      Soon after Mrs. de Moura Castro learned of the existence of a 25-year loan and other contract documents forged in her name, notice of cancellation was sent to Defendants, but Defendants refused to honor the notice of cancellation.

9.      Defendants also violated the FCRA, which restricts access to consumer credit reports except for specific, statutorily enumerated purposes under 15 U.S.C. § 1681b(f).

10.     Defendants, without notice or permission, accessed Plaintiffs' consumer reports under false pretenses, without any permissible purpose or authorization.

## II.   <u>JURISDICTION</u>

11.     Jurisdiction arises under the Consumer Credit Protection Act, 15 U.S.C. § 1640(e) (TILA) and § 1681p (FCRA), actionable through 28 U.S.C. § 1331.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

## III.   <u>PARTIES</u>

13.     Plaintiffs are Luiz de Moura Castro and Bridget de Moura Castro, husband and wife, respectively.  They are consumers who reside in Avon, CT.

14.     Defendant Loanpal, LLC d/b/a Goodleap ("Loanpal") is a California limited liability corporation with a principal office at 8781 Sierra College Blvd, Roseville, CA 95661.

15.     Loanpal is in the business of offering consumers loans for residential solar panels.

16.     Defendant Prime Energy LLC d/b/a Prime Energy Solar ("Prime") is a limited liability corporation with a principal office at 185 Plains Rd, Suite 208E, Milford, CT 06461.

17.     Prime is a licensed Home Improvement Contractor in Connecticut, registration number HIC.0656119.

18.     Defendant 1st Light Energy Inc. ("1st Light") is a California corporation with a principal office at 1869 Moffat Blvd, Manteca, CA 95336.

19.     1st Light is a licensed Home Improvement Contractor in Connecticut, registration number HIC.0648052.

20.     At all times relevant, each Defendant acted for the benefit of and on behalf of the other Defendants, and Defendants Prime and 1st Light acted as the agents of Loanpal.

21.     Upon information and belief, Defendants carry on a symbiotic business relationship in which Prime solicits customers at their homes on behalf of and for the benefit of 1st Light and Loanpal, 1st Light sells and installs the solar panels, and Loanpal finances the transactions.  All Defendants rely and depend on each other to carry out this course of business.

## IV.     STATEMENT OF CLAIM

### *Defendants Used and Obtained Plaintiffs' Credit Reports Without Authorization*

22.     On or about August 2020, Mrs. de Moura Castro was solicited by a salesperson at Plaintiffs' home in Avon, CT.

23.     On information and belief, the salesman, Mark Murphy, was employed by and/or acting an agent of all the Defendants.

24.     Defendants' agent Murphy told Mrs. de Moura Castro that senior citizens like her are given government benefits for "free" solar panels installed on her home.

25.     During the entire solicitation, Defendants' agent Murphy did not mention anything about a loan or the need for a credit check.

26.     At no point did the salesperson mention pulling credit, nor ask permission to do the same.

27.     Plaintiffs did not consent to Defendants using or obtaining their credit reports.

28.     Mrs. de Moura Castro never provided Defendants any authorization to have her husband's credit reports used or obtained.

29.     Plaintiffs were not provided, nor given the opportunity to review, any paperwork or documents, paper or electronic.

30.     Defendants surreptitiously and intentionally obtained and used Plaintiffs' consumer reports from the consumer reporting agencies.

31.     Plaintiffs did not authorize Defendants to use or obtain their consumer reports at any time.

32.     Pursuant to 15 U.S.C. § 1681b, a consumer report can be used or obtained only for the specific purposes stated thereunder, including for use in connection with a credit transaction that the consumer initiated, a firm credit offer, employment purposes, or a business transaction in which an individual has accepted personal liability for business credit.

33.     Defendants never had a permissible purpose to use or obtain Plaintiffs' credit reports.

34.     Defendants obtained Plaintiffs' consumer reports under false pretenses to the credit bureaus because Mrs. de Moura Castro never provided authorization for a credit pull, nor sought any extension of credit.

35.     Defendants knew or should have known that Plaintiffs did not initiate any credit transaction or authorize any inquiry into Plaintiffs' credit information at any time.

36.     As a result of Defendants' willful, wanton, reckless, and/or negligent action, Plaintiffs have been damaged.

37.     The consumer reports used and/or obtained by Defendants included a trove of sensitive personal and private information about Plaintiffs, such as birthdates, credit history profile, and the like.

38.     Defendants' privacy has been invaded as a result of the willful, wanton, reckless and/or negligent conduct of Defendants.

39.     Plaintiffs have suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

### *Defendants Forge the Contract and Refuse to Honor Plaintiffs' Notice of Cancellation*

40.     Based on the promise of free solar panels and significant savings**,** Mrs. de Moura Castro continued conversations with Defendants' agent Murphy regarding the installation of solar panels.

41.     Relying on the representation of free solar panels and significant savings, Mrs. de Moura Castro agreed to have the solar panels installed.

42.     At one point, Loanpal emailed Mrs. de Moura Castro a document to review through Docusign, but Mrs. de Moura Castro was unable to log in and view the document.

43.     Mrs. de Moura Castro told this to Defendants' agent Murphy, who explained that he needed a new account number or email associated with her.  He did not explain why.

44.     Shortly thereafter, Defendants' agent Murphy came to Plaintiffs' home and proceeded to do something on his electronic tablet device.  Mrs. de Moura Castro observed Defendants' agent Murphy tapping at the screen of the device.  At one point, Defendants' agent Murphy asked Mrs. de Moura Castro to tap the screen, but she could not see what it was and Defendants' agent Murphy did not explain it to her at the time.

45.     Relying on the representation of free solar panels and significant savings, Mrs. de Moura Castro tapped the screen to allow the solar project to go forward.

46.     Defendants did not provide a copy of any contract or other paperwork to Plaintiffs, including notice of right to cancel. Defendants eventually caused solar panels to be installed on Plaintiffs' home, even though no contract was provided to Plaintiffs or signed by Plaintiffs.

47.     On or about January 2021, Defendants sent a letter dated January 22, 2021, addressed to Luiz de Moura Castro, stating that Luiz had taken out a 25-year loan and that "[w]e've tried calling a few times to review your terms and was [sic] unsuccessful."

48.     Confused, Mrs. de Moura Castro suspected the January 22nd letter was a scam because she did not recall taking out a loan and did not recognize Loanpal.

49.     Mrs. de Moura Castro eventually provided the January 22nd letter to her daughter, Cema Siegel, who had been acting as Plaintiffs' power of attorney for financial matters.

50.     Ms. Siegel investigated the matter, speaking with Defendants' agent Murphy about the purported loan with Loanpal, and he agreed to have copies of any written agreements sent directly to Ms. Siegel.

51.     On or about February 18, 2021, a copy of the 25-year Loan Contract was provided to Ms. Siegel for the first time, along with other contract documents including a "Contract for PV Solar System" ("Purchase Contract").

52.     A true and correct copy of the 25-year Loan Contract is attached as Exhibit A.

53.     A true and correct copy of the Purchase Contract is attached as Exhibit B.

54.     Both the 25-year Loan Contract and the Purchase Contract bear the names and forged signatures and initials of Plaintiffs.  All of the signatures and initials on the 25-year Loan Contract and the Purchase Contract are forgeries.

55.     The email addresses listed on both the 25-year Loan Contract and the Purchase Contract were incorrect.

56.     Use of a fake email address ensured that Plaintiffs would not receive a copy of these contract documents at the time of forgery.

57.     The phone numbers listed on the 25-year Loan Contract and the Purchase Contract were also incorrect.  This ensured that Defendants would not be able to reach Plaintiffs by telephone to validate Plaintiffs' purported agreement to any of these written contract terms.

58.     Upon information, Defendants backdated some of the dates on the contracts, including the transaction date and the date on the notice of right to cancel on the Loan Contract, meaning the cancellation period had purportedly lapsed at the time the contract was forged.

59.     Brandon Alexander, the individual that signed the Purchase Contract on behalf of Defendants, was not licensed as a Home Improvement Sales Contractor by the state of Connecticut. Further, the license listed on the contract was both expired and registered to another individual.

60.     The cost of the solar system in the Purchase Contract was $54,880.88, more than three times the approximate average cost to purchase a solar system in Hartford County. With financing, the cost of the solar system was $73,816.

61.     Shortly after receiving these contract documents for the first time on February 18, 2021, Plaintiffs sent Defendants a notice of cancellation of the forged and hidden contracts.

62.     Despite receiving this notice of cancellation, Defendants did not cancel the contract.

63.     Defendants continue to deem Plaintiffs bound by the forged contracts and the payment terms therein, and have made demands for payment.

***Damage from Defendants' Fraudulent Conduct***

64.     As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Plaintiffs have been damaged.

65.     The Plaintiffs' home is burdened with ineffective solar panels.  Panels were installed despite the Plaintiffs' roof being completely shaded by trees; in other words, a home unfit for solar in any event.  Another picture of the panels (and significant tree cover) is pasted below:



66.     Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiffs being fraudulently duped into contracts they never saw, burdened with solar panels under terms they never agreed to, and subjected to wrongful demands for payment pursuant to these forgeries.  Moreover, Plaintiffs have suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT I
## Fair Credit Reporting Act
### (All Plaintiffs v. All Defendants)

67.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

68.     Defendants have violated the Fair Credit Reporting Act by willfully and/or negligently using and obtaining Plaintiffs' consumer credit reports without a statutorily permissible purpose and upon false pretenses. 15 U.S.C. §§ 1681b(f), 1681n, 1681o, 1681q. Defendants' willful and/or negligent conduct includes but is not limited to the following:

(a) Continuing to give sales agents access to electronic tools that allow them to obtain a consumer's credit report without the consent of the consumer;

(b) Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining a consumer's credit report without the consent of the consumer;

(c) Failing to supervise sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

(d) Failing to train sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

(e) Failing to discipline sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer; and,

(f) Employing quotas and/or sales goals/metrics that incentivize sales agents to pull credit reports without the consent of the consumer.

69.     Defendants' willful and/or negligent corporate action and/or inaction proximately caused damage to Plaintiffs.

## COUNT II
## TRUTH IN LENDING ACT

70.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

71.     The Truth in Lending Act mandates that lenders disclose certain "costs of credit" associated with the transaction.  Accurate disclosure of the "amount financed," the "finance charge," and the "Annual Percentage Rate" (APR) is necessary in order for consumers to be able to make meaningful comparisons of credit alternatives, and are mandatory disclosures. 15 U.S.C. § 1638.

72.     Terms such as "amount financed," "finance charge," and "annual percentage rate" must be used, as well as a "descriptive explanation" of each of these terms.  15 U.S.C. § 1638(a).

73.     The TILA mandates that these disclosures be written in a manner that is accurate, clear and conspicuous.  *See* 15 U.S.C. §§ 1632(a), 1638(a)(2)–(5); Reg. Z, §1026.17(a).

74.     Defendant did not comply with the requirements of the TILA.

## COUNT III
## Unfair or Deceptive Practices in Violation of the Connecticut Unfair Trade Practices Act
### (All Plaintiffs v. All Defendants)

75.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

11

76.     CUTPA provides, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat.. § 42-110b(a).

77.     Each defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110b, as defined in § 42-110a(3).

78.     The actions of Defendants were done in the conduct of trade or commerce.

79.     Defendants are subject to the Home Solicitation Sales Act ("HSSA").

80.     The HSSA provides that the any violation of its provisions in sections 42-135a, or 42-137 to 42-139, or the "failure to honor any provisions of the notice of cancellation required by this chapter shall constitute an unfair or deceptive act or practice as defined by section 42-110b." Conn. Gen. Stat. § 42-141(b).

81.     Defendants are also subject to the Home Improvement Act ("HIA"), Conn. Gen. Stat. § 20-418 et seq.

82.     The HIA provides that any violations of its provisions shall be deemed an unfair or deceptive act or practice under Conn. Gen. Stat. § 42-110b(a). Conn. Gen. Stat. § 20-427.

83.     Defendants have engaged in unfair and/or deceptive acts or practices within the meaning of Conn. Gen. Stat. 42-110b(a) including, but not limited, to:

> (a) Violating Conn. Gen. Stat. § 42-135a(1), including by failing to furnish Plaintiffs with a fully completed copy of all contracts and documents pertaining to the solar panel transaction at the time of the purported execution;
>
> (b) Violating Conn. Gen. Stat. § 42-135a(2), including by failing to furnish Plaintiffs with duplicate cancellation notices in conformance with the statute at the time of the purported execution;

(c) Violating Conn. Gen. Stat. § 42-135a(3), including by backdating the cancellation notice for the Loan Contract such that the cancellation period listed had expired at the time of the purported execution;

(d) Violating Conn. Gen. Stat. § 42-135a(5) by failing to inform Plaintiffs of their right to cancel at the time of the purported execution;

(e) Violating Conn. Gen. Stat. § 42-135(6) by misrepresenting to the Plaintiffs their right to cancel the transaction;

(f) Violating Conn. Gen. Stat. § 42-135(7) and (9) by failing or refusing to honor the valid cancellation notice delivered by Plaintiffs within 10 business days, and failing to notify the Plaintiffs whether it will abandon or repossess the solar panels;

(g) Attempting to enforce the contracts against the Plaintiffs despite Defendants' numerous violations of Conn. Gen. Stat. § 42-135, which make the contracts unenforceable against the Plaintiffs and voidable by statute;

(h) Violating Conn. Gen. Stat. § 42-138, including by failing to tender the note or evidence of indebtedness to the Plaintiffs within 10 days of receipt of the cancellation notice;

(i) Violating Conn. Gen. Stat. § 20-427, including by failing to register and/or ensure all of its agents were registered as home improvement sales contractors, presenting another person's license as their own, falsely representing or impersonating a home improvement sales contractor, and/or employing or allowing a person to act on their behalf who was not registered as a home improvement sales contractor;

(j) Violating Conn. Gen. Stat. § 20-429, including by failing to obtain the Plaintiffs' signatures on the contracts, misrepresenting the date of the transactions, omitting statutory notice of cancellation rights, using an unregistered salesperson to enter into the transaction, and failing to deliver a completed copy of the contracts at the time they were purportedly entered into;

(k) Making false, deceptive, and misleading statements about the transaction, including that the solar panels and installation would be free;

(l) Targeting Plaintiffs for solar panels, despite Plaintiffs' vulnerability as elders, the inappropriateness of the home for solar energy production, and the high cost of solar panels and financing relative to any potential savings;

(m) Forging Plaintiffs' signatures and initials on various contract documents;

(n) Misrepresenting the true nature of the transaction;

(o) Backdating contract documents so any purported cancellation period would have expired prior to the purported execution;

(p) Failing to furnish Plaintiffs with a fully completed receipt or copy of all contracts and documents pertaining to the solar transaction at the time of its execution, including any notice of cancellation;

(q) Requiring an electronic and paperless transaction despite Plaintiffs' age and their evident lack of familiarity with this technology;

(r) Refusing to honor Plaintiffs' notice of cancellation;

(s) Engaging in elder exploitation with respect to the Plaintiffs; and/or

(t) Failing to comply with TILA and FCRA.

84.     Defendants' actions have offended public policy, including the public policy purpose behind HIA, HSSA, TILA, FCRA, and the Connecticut's elder exploitation statute, Conn. Gen. Stat. § 17b-450 *et seq.*

85.     Defendants' actions were immoral, unscrupulous, unethical, and oppressive. Defendants knew or should have known of the requirements of HIA, HSSA, TILA, and FCRA and the special vulnerability of elderly homeowners, including Plaintiffs, to in-person sales tactics and home improvement scams. Defendants nevertheless targeted Plaintiffs for high-cost solar panels, misrepresented that they were free or part of a government program for seniors, misrepresented the nature of the transaction to Plaintiffs, forged their signatures on contracts, failed to provide copies of the contracts or notices of right to cancel, and violated numerous consumer protection statutes. Defendants enriched themselves at the expense of Plaintiffs, who they knew to be vulnerable persons, harming the Plaintiffs and frustrating public policy intended to protect consumers—especially elderly consumers—from fraud and abusive sales tactics.

86.     Defendants' actions cause substantial injury to consumers, like Plaintiffs, who believed they were participating in a free government program but were instead significantly indebted and misled into purchasing overpriced solar panels with little utility. These injuries are not outweighed by any countervailing benefits to consumers that the conduct produces.

87.     Defendants' misrepresentations and omissions about the solar panels and the nature of the transaction, including that they were part of a free government program and would yield significant savings, were likely to mislead consumers, especially since Defendants failed to provide a copy of the contracts and required an electronic, web-based transaction. Plaintiffs interpreted Defendants' misrepresentations and omissions reasonably under the circumstances, and the misrepresentations materially affected their decision with respect to the solar transaction.

88.     Plaintiffs would not have agreed to the transaction if Defendants had disclosed to them the true nature and cost of the transaction.

89.     As a direct, proximate, and foreseeable result of Defendants' violations of the CUTPA, Plaintiffs have suffered ascertainable losses, which include Plaintiffs' purported contractual obligations under the forged 25-year Loan Contract and the Purchase Contract, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs). Plaintiffs have additionally suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

### COUNT IV
### Intentionally or Reckless Unfair or Deceptive Practices in Violation of the Connecticut Unfair Trade Practices Act
### (All Plaintiffs v. All Defendants)

90.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

91.     Defendants' conduct alleged in Count III constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights.  Defendants' knew that their conduct offended public policy or was recklessly indifferent to that policy. Defendants' knew that that their actions were without reasonable justification or excuse in making false, deceptive, and misleading statements about the transaction, including misrepresenting that the solar panels were free as part of a government program, misrepresenting or concealing the nature of the transaction, forging Plaintiffs' signatures, failing to provide copies of the contract and notices of right to cancel, backdating the contract and cancellation notices, targeting Plaintiffs' based on their age and health conditions, requiring an electronic web-based transaction despite Plaintiffs' age and evident discomfort with this technology,

refusing to honor Plaintiffs' requests to cancel the transaction, engaging in elder exploitation, and violating HIA, HSSA, TILA, FCRA, and Conn. Gen. Stat. § 17b-450

92.     Defendants' consistent contravention of public policy was willful, immoral, unscrupulous, unethical, and oppressive, and caused substantial injury to the Plaintiff. Defendants' actions and failures to act were willful and exhibited a blatant disregard for the Plaintiff's well-being.

**COUNT V**
**Elder Exploitation**
**(All Plaintiffs v. All Defendants)**

93.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

94.     Connecticut law provides, "An elderly person who has been the victim of abuse, neglect, exploitation or abandonment, as such terms are defined in section 17b-450, may have a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, exploitation or abandonment together with costs and a reasonable attorney's fee." Conn. Gen. Stat. § 17b-462.

95.     The term "'exploitation' refers to the act or process of taking advantage of an elderly person by another person or caregiver whether for monetary, personal or other benefit, gain or profit." Conn. Gen. Stat. § 17b-450(7).

96.     Plaintiffs are "elderly person[s]" within the meaning of Conn. Gen. Stat. § 17b-450(1).

97.     Defendants engaged in exploitation of the Plaintiffs for financial gain within the meaning of Conn. Gen. Stat. § 17b-450(7) by marketing and purportedly selling the Plaintiffs

solar panels and a solar loan and refusing to cancel the transactions upon receiving notice of cancellation from the Plaintiffs, including by:

      (a) misrepresenting that the solar panels were "free" through a government program;

      (b) misrepresenting the terms of the sale and loan;

      (c) misrepresenting the appropriateness of the home for solar panels and the cost savings;

      (d) proceeding with the purported sale despite the inappropriateness of the Plaintiffs' home for solar panels, the high cost of panels and installation, the lack of savings, the Plaintiffs' ages and health conditions, and/or the Plaintiffs' lack of ownership of the home;

      (e) forging the Plaintiffs' signatures and/or dates on documents;

      (f) failing to provide required notices of cancellation and to comply with consumer protection laws; and

      (g) failing to cancel the transaction when requested.

98.     Defendants' exploitation of the Plaintiffs constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights.

99.     Defendants' exploitation caused actual damages to the Plaintiffs, including their purported obligations under the forged contracts, the cost associated with removing the panels, and emotional distress.

100.    Plaintiffs are victims of the Defendant's exploitation, and Defendants are liable to them for actual damages, punitive damages, costs and attorney's fees.

## COUNT VI
## Fraudulent Concealment
### (All Plaintiffs v. All Defendants)

101.     Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

102.     Defendants intentionally failed to disclose certain facts that were known only to Defendants and Plaintiffs could not have discovered, including the existence of the hidden agreements, that their signatures were forged on the agreements, that their names were placed on documents without their knowledge or consent, and other hidden facts.

103.     Defendants prevented Plaintiffs from discovering certain facts including the existence of the hidden agreements, that their signatures were forged on the agreements, that their names were placed on documents without their knowledge or consent, and other hidden facts.

104.     Defendants intended to deceive Plaintiffs by concealing the facts by, inter alia, not disclosing the facts to them, using bogus email addresses to conceal documents, forging documents, completing and submitting forged documents, completing and submitting a falsified credit application, and other hidden facts.

105.     Had the omitted and hidden information been disclosed, Plaintiffs would have reasonably behaved differently, i.e. they would have taken steps to stop the forged and fraudulent transaction.

106.     Plaintiffs have been harmed by the fraud and deceit in that they have been damaged in the amount of their financial (and other) obligations under the agreements, collection attempts, and have also suffered invasion of privacy, mental and emotional distress, worry, and aggravation.

107.    Defendants' fraudulent concealment of this transaction was a proximate cause of Plaintiffs' harm.

**V.    DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues so triable.

**VI.   PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demands judgment against Defendants for:

(a) Actual and statutory damages;

(b) Punitive damages;

(c) A declaration that the conduct complained of violates the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681b;

(d) A declaratory judgment that the contracts involved herein is void and cancelled;

(e) An Order requiring return of Plaintiffs' confidential consumer report and destruction of any copies;

(f) Equitable relief requiring Defendants to remove the solar panels and repair any damage to Plaintiffs' property;

(g) Attorney's fees and costs;

(h) Interest; and,

(i) Such other and further relief as the Court shall deem just and proper.

Respectfully submitted:


Date:  July 26, 2021                       __/s/ Jeffrey Gentes_____
                                           JEFFREY GENTES (ct28561)
                                           SARAH WHITE (ct29329)
                                           **CONNECTICUT FAIR HOUSING CENTER**
                                           60 Popieluszko Court
                                           Hartford, CT  06106
                                           (860) 263-0741
                                           (860) 247-4236 fax
                                           jgentes@ctfairhousing.org


                                           ANDREW M. MILZ (*pro hac vice* forthcoming)
                                           JODY T. LOPEZ-JACOBS (*pro hac vice* forthcoming)
                                           **FLITTER MILZ, P.C.**
                                           450 N Narberth Ave, Suite 101
                                           Narberth, PA 19072
                                           (888) 668-1225

                                           *Attorneys for Plaintiffs*