

**VIA ECF**                                                                     June 28, 2024

Hon. Robert M. Spector  
United States Magistrate Judge  
Richard C. Lee United States Courthouse  
141 Church Street  
New Haven, CT 06510

Re:     *Bridget deMoura Castro et al. v. GoodLeap, et al.*, 21-cv-1020-RMS (D. Conn.)

Dear Magistrate Judge Spector:

Per the Court's June 21, 2024 Order (ECF 114), the parties submit this joint status report.

On June 26, the parties met and conferred by telephone for approximately 20 minutes, during which they discussed the matters raised in Plaintiffs' letter motion to compel (ECF 111) ("Letter"), and related issues. The parties were unable to resolve their differences.

Below, the parties state their respective positions.

**Plaintiffs' Position**

       Plaintiffs still seek the (1) Notice and Knowledge Evidence and (2) Net Worth Evidence for all the reasons set forth in their opening June 18th Letter Motion to Compel (ECF 111). Those reasons are incorporated herein and not repeated here. As predicted by Plaintiffs at that time, Defendant GoodLeap has taken an identical position re refusing production in its Second Interrogatory Responses and Responses to Requests for Production. The parties agree that it makes sense for the Court to resolve the objections to the deposition topics (the impetus for the June 18th dispute) at the same time as the objections to the written requests, as the subjects and disputes are the same.

ATTORNEYS AT LAW

CHRISTOPHER D. BARRAZA    PARTNER    DIRECT 212 508 0483    CBARRAZA@PHILLIPSLYTLE.COM

620 EIGHTH AVENUE 38TH FLOOR NEW YORK, NEW YORK 10018-1442 PHONE (212) 759-4888 FAX (212) 308-9079 | PHILLIPSLYTLE.COM

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | CHICAGO, IL | WASHINGTON, DC | CANADA: WATERLOO REGION



**(1) Notice and Knowledge Evidence**

At the June 20th conference with the Court, Plaintiffs offered a temporal compromise, seeking only "other complaints" evidence from 2019-2021 – encompassing a one-year period before and after the door-to-door transaction, which also encompasses a period of GoodLeap's investigation and ultimate refusal (in 2021 to the present) to cancel this predatory transaction.

New evidence supports Plaintiffs' position and undercuts GoodLeap's objections. The ease of searching for consumer complaints is apparent from the testimony of an employee in GoodLeap's compliance department, Briana Teague, who was deposed this Tuesday June 25, 2024.[1] Ms. Teague testified that for all nationwide "level three" complaints (i.e., from BBB, CFPB, government agencies, etc.) handled by GoodLeap's compliance department, including complaints relating to solar loans, such complaints are maintained in one place on **Microsoft Excel spreadsheets**. According to Teague, there is a separate spreadsheet for each year, going back at least five years, and one can search for specific terms on that spreadsheet in a matter of seconds, including terms such as "forgery," "email," "not my signature," etc. The spreadsheet is also organized by "complaint type," which includes "Contract Dispute," "Never Signed," and "Unaware of Loan." Teague explained that GoodLeap also monitors complaints of elder abuse, and keeps track of the borrower's age at the time of the loan. Goodleap can easily produce all the requested evidence with a few clicks.

Plaintiffs offered the further compromise that they are agreeable to production of the complaints spreadsheets for 2019, 2020, and 2021. In response to GoodLeap's concern about redacting PII, Plaintiffs offered the concession that the spreadsheet column for the complaining consumers' loan numbers (arguably PII) be redacted entirely.

Despite Plaintiffs' considerable concessions, GoodLeap still refuses to agree to production. GoodLeap is a nationwide corporation and its business practices and record of fraud are consistent with a uniform business model across the 50 states.

---

[1] The written transcript is not yet available. Plaintiffs can, however, play the video recording of the deposition.


There is no difference between an elderly consumer in North Carolina complaining about a hidden GoodLeap contract, impermissible credit pull, forged signature, and bogus email address than a consumer in Connecticut making the same allegations.  *See Betty Ree Commodore v. GoodLeap, LLC et al.*, No. 1:22-cv-00832 (M.D.N.C.).  GoodLeap's notice and knowledge of this exact, system-wide problem is relevant and discoverable. And, as we know now, such evidence—Microsoft Excel spreadsheets—can be easily turned over.

### (2) Net Worth Evidence

Plaintiffs offered the concession that GoodLeap turn over the last two years' balance sheets and financial statements.  Plaintiffs offered to keep these specific documents confidential and would agree to a protective order as to these potentially sensitive information.  GoodLeap still says it will not produce even this limited information before trial, which would preclude Plaintiffs from taking any discovery whatsoever regarding GoodLeap's asserted net worth.

**GoodLeap's Position**

Plaintiffs cite to other litigation filed by their counsel as "evidence" of purported misconduct by GoodLeap.  Plaintiffs' references are improper, inappropriate, irrelevant, and, clearly, intended to prejudice GoodLeap.  Moreover, they are a harbinger of how Plaintiffs' intend to present their case to the jury, and validate GoodLeap's previous motion *in limine* to exclude reference at trial to other litigation and regulatory inquiries, which it will renew.

GoodLeap vigorously disputes Plaintiffs' allegations and characterizations above and in the Letter. GoodLeap reserves all rights and will file a formal opposition to Plaintiffs' motion.

**"Notice and Knowledge"**

Plaintiffs' claim of having made "considerable concessions" is overstated. They have offered to narrow the scope of their requests to a three-year period, and nothing more.



GoodLeap, by contrast, has offered to search for and produce documents and communications regarding "complaints" that it received from borrowers in Connecticut concerning 1st Light Energy and Prime Energy Solar (to the extent they exist), using the search terms provided by Plaintiffs, from 2019 through 2021. Plaintiffs have rejected GoodLeap's proposal, and maintain that they are entitled to discover all "complaints" over a three-year period, nationwide, regardless of installer, concerning allegations of fraud, forgery, elder abuse, unauthorized credit pulls, and the like. Plaintiffs are not entitled to such unbridled discovery.

This action concerns a single loan in Connecticut for $51,560.88. It is not a class action, nor do Plaintiffs seek recovery for alleged acts or omissions that occurred outside of Connecticut. Yet Plaintiffs seek nationwide discovery regarding all borrower "complaints" received by GoodLeap concerning a variety of topics over a three-year period, for all installers, regardless of the veracity of the "complaint," and whether the "complaint" was substantiated. That a "complaint" is submitted by a borrower is proof of nothing. Instead, it reinforces GoodLeap's objections to Plaintiffs' requests.

On their face, and for the reasons above, Topic Nos 16-21, are disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Moreover, given the exhibits introduced by Plaintiffs during depositions of GoodLeap employees earlier this week, Plaintiffs already have "other complaints" made by GoodLeap borrowers in other states to the Better Business Bureau and the CFPB regarding supposed unauthorized credit pulls, forgery, fraud, contract alterations, contract terms, etc.[2] Further, as a practical matter, it is inconceivable how GoodLeap could reasonably prepare a corporate representative to testify about "complaints" submitted nationwide over a three-year period, regardless of installer or validity.

---

[2] Counsel refused to disclose where he obtained the materials from, but they appear to have, at least in part, been produced in other litigation.



Plaintiffs' contention that "Goodleap can easily produce all the requested evidence with a few clicks," is beyond inaccurate. The ease with which a search may (or may not) be run is not indicative of the unreasonable, undue burden imposed by reviewing the search results for (i) responsiveness, and (ii) redaction of personal identifying information ("PII"), which requires a line-by-line inquiry, not the redaction of a single column or columns.[3] Furthermore, there are multiple databases across multiple departments that would need to be searched. So, running searches would not be a matter of a "few clicks."

GoodLeap has run a nationwide search in the databases of a single department (Compliance) using the terms and topics provided by Plaintiffs, and the volume of potentially responsive "complaints," (GoodLeap logs all "complaints" from borrowers, regardless of whether they are substantiated) is staggering:

- Alleged Credit Disputes – All States – All Time (6/20/2022 oldest case open date)
    - 16,420 cases

- Customer Inquiry Cases Regarding Alleged Primary Issue Type – All States – All Time (5/9/2018 oldest case open date)
    - 24,030 cases

    - **Primary Issue Type**

        - Altered Fraudulent Documents
        - Buyer's Remorse
        - Contract Discrepancy
        - Contract Dispute
        - Elder Abuse
        - Fraud

---

[3]  PII is not, as counsel suggests, limited to a borrower's account number. *See* § 200.79 Personally Identifiable Information (PII), at https://www.govinfo.gov/content/pkg/CFR-2018-title2-vol1/pdf/CFR-2018-title2-vol1-sec200-79.pdf.



- Loan Terms
- Co-borrower Issue

The cost and burden in company labor and attorney fees to review these results, which are incomplete and from just one department, will be astronomical, not to mention impossible to complete before the discovery cutoff of July 12.

Finally, the case law cited by Plaintiffs does not support their position. For example, in *Shackleford*, the court (i) found that "plaintiff's discovery requests are overbroad," (ii) limited their scope to "complaints that allege similar conduct to that alleged in the Complaint," and (iii) cabined the timeframe of the requests to two years preceding when the alleged wrongful conduct occurred. 2020 WL 3488913, at *9. Similarly, in *Brown*, the court narrowed the plaintiff's requests to "any prior complaints from Florida, in 2016 and 2017, that allege Defendants violated the FCRA by obtaining a consumer credit report without authorization by the consumer." 614 F.Supp.3d at 1133. And in *Cenatiempo*, the Connecticut Supreme Court said nothing about the scope of discovery requests, nor did it order the production of anything. It merely ruled that the "plaintiffs have alleged a CUTPA violation sufficient to survive a motion to strike." 333 Conn. at 805. *Cenatiempo* thus is inapposite.

**"Net Worth"**

Evidence of wealth is generally inadmissible in trials not involving punitive damages. *Kaufman LLC v. Estate of Feinberg*, 3:13-cv-012259, 2022 WL 13845083, *9 (D. Conn. Oct. 24, 2022) (citing *Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004). Such evidence should typically be excluded because "it can be taken as suggesting the defendant should respond in damages because he is rich." *Kaufman*, 2022 WL 13845083, at *9.

GoodLeap is a privately held limited liability company. It is not publicly traded, and its financial condition is highly confidential. The discovery sought by Plaintiffs—"Any and all records reflecting your current net worth, gross receipts for the past three years, copies of your annual report to shareholders for each of the preceding five years, as well as the quarterly profit and loss statements, and balance sheets for each of the preceding eight quarters[,]"and "Identify your accountant(s) and/or accounting firm(s) that you



have used to prepare your tax returns, financial statements, or that you have used to conduct any audits[,]"—is overly broad, intrusive, and incongruent with the "goals of proportionality and efficiency embodied in the Federal Rules." *Fam. Wireless #1, LLC, v. Auto. Techs., Inc.*, No. 3:15CV01310(JCH), 2016 WL 3911870, at *3 (D. Conn. July 15, 2016).

Information regarding GoodLeap's financial condition is sensitive, non-public, and highly confidential, and its disclosure will require approval at the highest levels of the company. If the Court is inclined to grant discovery regarding GoodLeap's financial condition, then, at a minimum, a protective order should govern the disclosure of such information, and it should suffice for GoodLeap to provide a financial summary verified by an employee with knowledge. *See id* ("Requiring disclosure of bank statements and other supporting documents does not achieve the goals of proportionality and efficiency embodied in the Federal Rules*."*). But Plaintiffs should not be permitted to discover GoodLeap's tax returns. See *id.*, n.1 ("The Court notes that defendant seeks disclosure of "tax filings" as support for a net worth calculation. 'Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'") (quoting *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010)).

**Remaining Issues**

GoodLeap intends to seek entry of a protective order that mirrors the standing order used by other judges in this District. E.g., https://www.ctd.uscourts.gov/sites/default/files/forms/JCH%20Standing%20Protective%20Order02052013.pdf.

During the meet and confer, Plaintiffs' counsel stated he would oppose entry of such an order. Setting aside that entry of a protective order should not be a controversial request, entry is necessary and appropriate to shield non-public, sensitive trade secrets and company policies, and other business information, from public disclosure. It also is necessary to protect against the use of non-public, sensitive trade secrets and business



Hon. Robert M. Spector  June 28, 2024
Page 8

information produced to Plaintiffs in this action, in litigation pending elsewhere (which, unfortunately, already has occurred).

***

Very truly yours,

Phillips Lytle LLP

By */s/ Christopher D. Barraza*

Christopher D. Barraza


Via ECF: Andrew M. Milz, Esq.
Jeff Gentes, Esq.
Sarah White, Esq.
Eric Freiman, Esq.